HEARNE SAND & GRAVEL CO. v.
McKINNEY et al.

No. 1880.

Court of Civil Appeals of Texas. Waco.

June 3, 1937.

Rehearing Denied July 8, 1937.

Tirey & Tirey, of Waco, for appellant.

Seale & Thompson, of Nacogdoches, for appellees.

ALEXANDER, Justice.

The Hearne Sand & Gravel Company brought this suit against R. W. McKinney to recover a balance alleged to be due plaintiff for gravel furnished by it to the defendant. A trial before a jury resulted in judgment for the defendant. The plaintiff appealed.

In 1934, McKinney was engaged in building a state highway in Anderson county. He entered into a contract with the Tucker Sand & Gravel Company to furnish at stipulated prices the crushed stone and gravel needed for said job. He denied that he ever purchased any material from the plaintiff, Hearne Sand & Gravel Company, but it was his contention that the plaintiff took over and assumed the contract of Tucker Sand & Gravel Company, and that whatever material was actually furnished to him by plaintiff was furnished under and in compliance with the terms of the Tucker Sand & Gravel Company's contract, and that the material so furnished had been paid for according to the prices therein stipulated. On the other hand, it was the contention of the plaintiff that McKinney, through his agent, contracted directly with the plaintiff for the material at stipulated prices, and that the material had been furnished in accordance with said contract and had not been paid for in full. The jury found that the defendant did not enter into a contract with the plaintiff to furnish the gravel in question. The plaintiff contends that the finding of the jury in this respect is contrary to the evidence.

We have read the evidence very carefully and have reached the conclusion that it is sufficient to support the verdict of the jury. It is undisputed that McKinney originally made a contract with Tucker Sand & Gravel Company for the stone and gravel needed for the job in question. After a part of the material had been furnished, Tucker Sand & Gravel Company broke down and was unable to furnish the material as promptly as had been contracted. T. J. Palm, president and general manager of Hearne Sand & Gravel Company, testified that he made his contract with V. H. Montgomery, who was McKinney's agent, in the latter part of May or the first of June, 1934. In this connection he testified as follows: "I saw Mr. Montgomery, as I stated before, on the job. He had been buying material from the Tucker Sand & Gravel Company, and Mr. Whiteman who had been operating the Tucker Sand & Gravel Company had broken down, you might say, blown up, and he came to me and made a proposition to me to operate the Tucker Sand & Gravel Company. I went over there and investigated it and while there I talked to Mr. Montgomery. I told him that Mr. Whiteman represented that he had some business there he was unable to furnish the material on, due to the fact that he did not have any

equipment, everything broke down, and that we were considering operating it further; that I had an option to take it over, take over the operation and take over the property. I asked him if he wanted to buy that material from us and he said that he had a contract with Mr. Whiteman on all the material he wanted delivered on it. I told him that we could not guarantee delivery on the material from this property, except as to the sand, and he asked about the price on it. I told him we were furnishing such material as we could from the Tucker Sand & Gravel Company at prices that had been paid, but would not guarantee delivery on that; that we could ship him such other material as he might need from our pits at Hearne. I gave him prices on that material and he objected to the prices charged because it cost more money than the local material. So I told him that if he wanted to insist on his contract with Mr. Whiteman he would have to look to Mr. Whiteman for it and that I would not attempt to operate those properties at all because I did not want to stand in his way or in Mr. Whiteman's way, but he knew he could not get delivery from Whiteman and he asked me if my contract and option with Whiteman did not require our fulfilling Mr. Whiteman's contract. I told him it absolutely did not and that we would not assume the contract of the Tucker Sand & Gravel Company; the only way that I would sell him that material would be such as could be produced there. * * * I told him what the material at Hearne would cost and what the freight would be and he said, 'Well, that will cost a little more than this other material' and he wanted to know if we would make it the same price as the material he had been getting from Whiteman. I told him that was impossible because the freight alone was almost as much as the price on the local material and that we could not afford to give away material; that he would have to pay the regular price for it and on that he gave me an order for immediate shipment of two cars of gravel, which we shipped and which he paid for at the price which we invoiced." On the other hand, Mr. Montgomery denied having made the trade as testified to by Mr. Palm. In fact, he denied having had any conversation with Mr. Palm along about the time referred to. Both Montgomery and Jack McKinney, another employee of the defendant, testified that they understood that Hearne Sand & Gravel Company had taken over the contract of Tucker Sand & Gravel Company; that they continued to order gravel for the job from Tucker Sand & Gravel Company, through its manager Mr. Whiteman, and that sometimes the order would be filled by Tucker Sand & Gravel Company and sometimes by the Hearne Sand & Gravel Company. They testified that all of the orders placed by them for the material were given directly to the Tucker Sand & Gravel Company, through Mr. Whiteman, except the last two or three cars of gravel, and that they attempted to order those cars from Mr. Whiteman, but, being unable to get in touch with him and knowing that the Hearne Sand & Gravel Company had been filling orders previously placed with the Tucker Sand & Gravel Company, they placed the orders directly with Hearne Sand & Gravel Company. Said two witnesses also testified that, after a large part of the gravel had been delivered to them, a dispute arose as to who was to be responsible for hauling the gravel from the railroad station to the job. Mr. Palm was making inquiry about some of the invoices for gravel that had been delivered by Hearne Sand & Gravel Company and was informed by Mr. Montgomery that McKinney had some deductions to be made for trucking the material from the station to the job, and when Mr. Palm objected to these deductions, they informed him that, under the terms of their contract with Tucker Sand & Gravel Company, the seller was to pay these charges. They testified that Mr. Palm then agreed to furnish the trucks thereafter for hauling the gravel from the railway station to the job, which was in accordance with the terms of the contract with Tucker Sand & Gravel Company. They testified to other facts and circumstances tending to show that Mr. Palm recognized that the material that was being furnished by the Hearne Sand & Gravel Company was being so furnished under the Tucker Sand & Gravel Company contract. In view of the fact that Montgomery denied having made the contract, as testified to by Mr. Palm, this evidence was alone sufficient to raise a question of fact for the jury as to whether or not the Hearne Sand & Gravel Company had a contract, as alleged by it. The jury found that the plaintiff did not have such a contract. Since the plaintiff sued to recover on a contract, the burden was on it to prove the contract as alleged, and, since the evidence raised an issue as to the existence of the contract and the jury resolved that issue in favor of the defendant.

the plaintiff was not entitled to recover on the cause of action as alleged. The circumstances under which the defendant received the gravel were such as to justify it in believing that plaintiff had taken over the contract of Tucker Sand & Gravel Company and that the gravel was being delivered to it under the terms of that contract. Hence, the mere fact that the defendant received gravel that had been shipped directly from plaintiff's pit was not in itself sufficient to conclusively establish a contract between plaintiff and defendant, as alleged by plaintiff. In view of the substantial conflict in the evidence, this court is bound by the verdict of the jury.

The judgment of the trial court is affirmed.